*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

PETER TIMOTHY O'BRIEN,

        Defendant-Appellant.

UNPUBLISHED
April 17, 2026
11:12 AM

No. 374852
Tuscola Circuit Court
LC No. 2024-016415-FH

Before: KOROBKIN, P.J., and YOUNG and BAZZI, JJ.

PER CURIAM.

Defendant, Peter Timothy O'Brien, appeals by leave granted[1] his above-guidelines sentence of 40 to 60 months for operating a vehicle while intoxicated causing serious injury (OWI-injury), MCL 257.625(5). On appeal, defendant contends that his sentence was unreasonable. For the reasons set forth in this opinion, we disagree and therefore affirm.

## I. BACKGROUND AND FACTS

On the evening of February 16, 2024, Tuscola County Sherriff's Office Deputies Thomas Peterson and Marcus Armstrong were investigating an unrelated matter on Mertz Road in Fremont Township. In rendering assistance to the drivers of two vehicles and to protect the scene, the deputies activated the emergency lights on their vehicles and parked them primarily on the shoulder of the northbound lane, but the vehicles still jutted out into the lane. As Deputy Peterson stood adjacent to Deputy Armstrong's vehicle on the roadway-side of that vehicle, defendant, who had a blood alcohol content (BAC) of 0.151g per 100ml, approached the scene. Defendant's vehicle first struck Deputy Peterson's vehicle, which was positioned behind Deputy Armstrong's vehicle. Defendant's vehicle next struck Deputy Peterson and then the open driver's-side door of Deputy Armstrong's vehicle. Deputy Peterson thus was pushed against that open door of Deputy Armstrong's vehicle and "rode the front of" defendant's vehicle as it passed the vehicles the

---

[1] *People v O'Brien*, unpublished order of the Court of Appeals, entered April 22, 2025 (Docket No. 374852).

deputies had been assisting before Deputy Peterson eventually became dislodged and landed in a ditch. Defendant had initially been traveling at 47 mph, then slowed to 45 mph through 2.4 seconds before the crash, and to 34 mph 0.1 seconds before impact. Deputy Peterson suffered significant injuries as a result of this accident.

Defendant was charged with three counts arising from the accident: operating while intoxicated, third offense (OWI-third), MCL 257.625(1)(a); OWI-injury, MCL 257.625(5)(a); and failure to use due care when passing a stationary vehicle causing injury to emergency personnel, MCL 257.653a(3). The prosecution and defendant later reached an agreement under which defendant agreed to plead no contest to the OWI-injury and failure-to-use-due-care counts in exchange for the prosecution's dismissal of the OWI-third charge. Defendant pleaded in accordance with that agreement, and the trial court accepted these pleas.

At sentencing, defendant's prior record variables (PRVs) were calculated to total 15 points and his offense variables (OVs) were calculated to total 56 points. Defendant's PRV score was composed of 5 points for PRV 5, MCL 777.55 (prior misdemeanor convictions or prior misdemeanor juvenile adjudications), and 10 points for PRV 7, MCL 777.57 (subsequent or concurrent felony convictions). Defendant's OV score was composed of: 10 points for OV 3, MCL 777.33 (physical injury to victim); 10 points for OV 4, MCL 777.34 (psychological injury to victim); 10 points for OV 9, MCL 777.39 (number of victims); 1 point for OV 12, MCL 777.42 (contemporaneous felonious criminal acts); 10 points for OV 17, MCL 777.47 (degree of negligence exhibited); and 15 points for OV 18, MCL 777.48 (operator ability affected by alcohol of drugs). Defendant was accordingly assessed an advisory sentencing guidelines range of 7 to 23 months.

The prosecution requested that the trial court exceed the advisory guidelines range and sentence defendant to 40 to 60 months for OWI-injury and to 16 to 24 months for failure to use due care, the maximum penalties for those offenses allowable under the relevant statutes. The prosecution supported this request by noting the obviousness of the police vehicles' presence, that defendant had operated a vehicle while intoxicated before, defendant's BAC of 0.151, and Deputy Peterson's extensive and long-lasting injuries, among other factors.

In fashioning defendant's sentence, the trial court highlighted a wide variety of considerations and noted that the law required its sentence to be reasonable and proportionate. The trial court ultimately concluded that a sentence within the guidelines range was unreasonable and imposed concurrent sentences of 40 to 60 months for OWI-injury and 130 days for failure to use due care, with credit for 130 days served.

Defendant later filed a motion for correction of an invalid sentence, which the trial court denied. This Court granted defendant's application for leave to appeal.

II. STANDARD OF REVIEW

We review sentencing decisions for an abuse of discretion, *People v Boykin*, 510 Mich 171, 182; 987 NW2d 58 (2022), and the factual findings underlying those decisions for clear error, *People v Lampe*, 327 Mich App 104, 125-126; 933 NW2d 314 (2019).

III. ANALYSIS

On appeal, defendant contests the reasonableness of his sentence. Defendant argues that the trial court failed to adequately justify its above-guidelines sentence, that he was not solely culpable for the accident, and that the trial court disregarded his potential for rehabilitation. We disagree.

In sentencing a defendant, "[a] trial court abuses its discretion by violating the principle of proportionality, which requires that a sentence be proportionate to the seriousness of the offense and the circumstances of the offender." *People v Brcic*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket Nos. 362727 and 366230); slip op at 10 (quotation marks omitted). In contrast to within-guidelines sentences, sentences that depart from the guidelines do not enjoy a rebuttable presumption of proportionality. *Id.* Nonetheless, trial courts may "depart from the guidelines when, in their judgment, the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime." *People v Walden*, 319 Mich App 344, 352; 901 NW2d 142 (2017), quoting *People v Milbourn*, 435 Mich 630, 657; 461 NW2d 1 (1990). In departing from the sentencing guidelines range, trial courts need not "articulate substantial and compelling reasons . . . ; rather, the sentence must only be reasonable." *Walden*, 319 Mich App at 351, citing *People v Lockridge*, 498 Mich 358, 391-392; 870 NW2d 502 (2015).[2]

We require trial courts imposing an out-of-guidelines sentences to "justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence [i.e., one within the guidelines] would have been." *People v Lydic*, 335 Mich App 486, 500-501; 967 NW2d 847 (2021) (citation and quotation marks omitted). "[R]elevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (citations omitted).

In the present case, defendant argues that the trial court inadequately justified the departure and extent thereof because the reasons that the trial court provided for departing from the guidelines range were already accounted for by the guidelines. In sentencing defendant to 40 to 60 months for OWI-injury, the trial court departed from the guidelines by 17 months and imposed the statutory maximum for that offense. The trial court articulated various considerations in imposing this sentence such as defendant's prior OWI convictions and exhibition of remorse, but

_____

[2] To the extent defendant challenges his sentence as disproportionate because the trial court did not provide "objective and verifiable" reasons for departing from the sentencing guidelines, this argument has no merit. We have explained that "the prior requirement for 'objective and verifiable' reasons for departing from the guidelines was tied to the requirement for 'substantial and compelling' reasons for departure, and courts are no longer required to articulate 'substantial and compelling' reasons to impose a sentence above the advisory guidelines range." *People v Carlson*, 332 Mich App 663, 674; 958 NW2d 278 (2020) (citations omitted). Therefore, we review defendant's sentence for reasonableness, not whether its departure from the guidelines is grounded in reasons that are "objective and verifiable." *Lockridge*, 498 Mich at 392.

the trial court's discussion makes clear that the drivers of the departure and its extent were the seriousness of defendant's offense and the recklessness defendant exhibited in committing that offense, as well as the severity of Deputy Peterson's injuries.

Regarding the seriousness of defendant's offense and defendant's recklessness in committing that offense, the trial court highlighted defendant's high BAC and described the extremity of defendant's recklessness by explaining how defendant had "driv[en] at a high rate of speed"[3] so closely to obvious police units, "taking no evasive action," such that "that it was inevitable that something would happen to a piece of property[] [o]r worse yet, like it did in this case, to someone." Defendant is correct that these factors were taken into account, at least to some degree, by the OVs he was assessed, specifically for placing "2 to 9 victims . . . in danger of physical injury or death" or "4 to 19 victims . . . in danger of property loss" under OV 9, MCL 777.39(1)(c) (number of victims), for "show[ing] a wanton or reckless disregard for the life or property of another person" under OV 17, MCL 777.47(1)(a) (degree of negligence exhibited), and for operating a vehicle with a BAC of over 0.15 but less than 0.2 under OV 18, MCL 777.48(1)(b) (operator ability affected by alcohol of drugs). But we cannot say that the trial court abused its discretion in concluding that these OV scores inadequately accounted for the severity of defendant's offense and defendant's recklessness. See *Dixon-Bey*, 321 Mich App at 525. As evidenced by the video from Deputy Armstrong's bodycam submitted both to the trial court and on appeal, the flashing lights on the police vehicles made apparent their location on the roadway, but defendant (driving with a BAC almost twice the legal limit) began to slow his vehicle only about two seconds before the incident, and then proceeded closely enough to the conspicuous police vehicles such that he could strike them and Deputy Peterson. The trial court did not clearly err in finding that defendant indeed acted extremely recklessly, without regard to the people or property he encountered. Given this evidence, according greater weight to defendant's recklessness and the severity of his offense was not an abuse of discretion.

The trial court also focused heavily on the injuries Deputy Peterson suffered. Deputy Peterson suffered significant injuries to his leg, face, body, and head, and the trial court characterized those injuries as "to a degree where he may not be able to come back to the profession that he chose." The trial court also explained that Deputy Peterson had to undergo numerous surgeries and extensive physical therapy and may not "physically ever be the same as a result of what happened." The trial court further noted that there was "a significant period of time" during which Deputy Peterson could not walk, and at the time of sentencing, Deputy Peterson could do so only with the assistance of a cane. The trial court also expounded on the extremity of Deputy Peterson's psychological injuries, including memory loss and anxiety "that will plague Deputy Peterson for a very, very long time" and specifically in his job, should he ever be able to return to his profession in law enforcement The court additionally emphasized that defendant had made a

---

[3] Defendant challenges the trial court's statement that he was "driving at a high rate of speed" as inaccurate. But defendant takes this statement out of context. For the trial court concluded that defendant was driving at a high rate of speed in the context of closely approaching individuals and clearly-marked police vehicles that were impeding part of the roadway. The trial court committed no clear error in characterizing this as reckless behavior.

"lifelong impact" on Deputy Peterson's life and that there was "no timetable whatsoever where we know for a fact [that Deputy Peterson is] going to be better."

Certainly, Deputy Peterson's injuries were accounted for at least to some degree by the assessments for "[b]odily injury requiring medical treatment occurred to a victim" under OV 3, MCL 777.33(1)(d) (physical injury to victim), and for "[s]erious psychological injury requiring professional treatment occurred to a victim" under OV 4, MCL 777.34(1)(a) (psychological injury to victim). But again, we cannot quarrel with the trial court's determination that these scores inadequately accounted for the severity and circumstances of defendant's offense. See *Dixon-Bey*, 321 Mich App at 525. Deputy Peterson suffered extensive injuries requiring surgeries and significant physical therapy, was disabled completely from walking for a period of time and at sentencing was using a cane, and was under monitoring for possible additional neurological injuries caused by trauma to his head. In addition, Deputy Peterson suffered from memory loss over four months after the accident and had long-lasting anxiety that the trial court anticipated would impact his law-enforcement work. The trial court did not abuse its discretion in determining that these extreme physical and psychological injuries, perhaps inhibiting Deputy Peterson from ever returning to his profession, indeed warranted additional weight beyond his 10-point score for OV 3, MCL 777.33 (physical injury to victim), and his 10-point score for OV 4, MCL 777.34 (psychological injury to victim). See *People v Anderson*, 298 Mich App 178, 187-189; 825 NW2d 678 (2012) (stating that the trial court did not abuse its discretion in concluding that an OV 3 score inadequately accounted for the victims' severe injuries that had long-lasting effects requiring continuing treatment and noting how OV 4 does not "always account for the unique psychological injuries suffered by individual victims").

"An abuse-of-discretion standard recognizes that there may be more than one principled outcome and the trial court may not deviate from that principled range of outcomes." *Boykin*, 510 Mich at 182. Given the trial court's reasoned explanation for its determination that an above-guidelines sentence was more proportionate than a within-guidelines sentence, we conclude that the trial court did not abuse its discretion in departing from the guidelines to impose a minimum sentence of 40 months. See *Lydic*, 335 Mich App at 500-501; *Walden*, 319 Mich App at 352.

We are also unpersuaded by defendant's other arguments as to why his sentence is unreasonable. Defendant argues that the trial court improperly failed to consider how the opening of the driver's-side door of Deputy Armstrong's vehicle contributed to the accident, asserting that absent the opening of this door, "the accident would likely have never occurred." As best we can tell, this argument completely lacks support in the record. Deputy Armstrong's bodycam video shows that, just before defendant's arrival at the scene, Deputy Peterson stepped backwards from his prior position that was directly adjacent to the driver's-side door of Deputy Armstrong's vehicle such that the driver's-side door of the vehicle could be opened. As a result, Deputy Peterson was struck before defendant's vehicle made contact with the open driver's-side door of Deputy Armstrong's vehicle; indeed, Deputy Peterson was lodged onto defendant's vehicle at the point defendant's vehicle made contact with the open door and thus was pushed against that open door. The trial court found the same in deciding defendant's motion for correction of an invalid sentence, stating that Deputy Peterson was not at the end of the open door, but rather "close to the vehicle," and that defendant's vehicle "crash[ed] into Deputy Peterson, the door, and then the front of the vehicle." These findings by the trial court were not clearly erroneous.

Defendant lastly argues that his above-guidelines sentence disregarded his potential for rehabilitation. When fashioning a sentence, trial courts must consider, among other factors, "reformation of the offender." *People v Copeland*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363925); slip op at 3 (quotation marks and citation omitted). A trial court need not consider an offender's reformation solely prospectively, as the offender's capacity to be reformed, but may also consider whether an offender "ha[s] actually demonstrated the capacity for reform." See *id.* at ___; slip op at 5. The trial court here clearly considered defendant's reformation, both retrospectively and prospectively, explaining that defendant had been unable to "make changes in [his] life to immediately eliminate" the possibility of drunk driving from occurring again after his prior OWI convictions, noting that the "silver lining" was that defendant could emerge from this case and become sober, and describing the court's "sincere[] hope that when [defendant is] released from incarceration, that" defendant emphasizes rehabilitation. The court simply believed that the other factors it was required to consider—the protection of society, disciplining defendant, and deterring others from committing similar offenses, *id.* at ___; slip op at 3—outweighed the reformation of defendant, to the extent, as defendant argues, that it delayed his ability to access particular means of treatment at an earlier date. The trial court did not abuse its discretion by inadequately considering defendant's potential for reformation.

In sum, the trial court did not abuse its discretion, and defendant is not entitled to resentencing.

Affirmed.

/s/ Daniel S. Korobkin
/s/ Adrienne N. Young
/s/ Mariam S. Bazzi